## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTONIO HARRINGTON, # Y13279,     )<br>    )<br>    **Plaintiff,**     )<br>    vs.     )<br>    )<br>**FRERKING,**     )<br>**WHITE,**     )<br>**COAT,**     )<br>**THESES,[1] and**     )<br>**UNKNOWN CORRECTIONAL OFFICER**   )<br>**(Big Muddy CC),**     )<br>    )<br>    **Defendants.**     ) | **Case No. 23-cv-01973-SMY** |

## <u>MEMORANDUM AND ORDER</u>

**YANDLE, District Judge:**

Plaintiff Antonio Harrington, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Pinckneyville Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while he was confined at Big Muddy River Correctional Center. He claims Defendants subjected him to excessive force and denied him medical attention, in violation of the Eighth and Fourteenth Amendments. He seeks monetary damages (Doc. 1).

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

---

[1] Plaintiff spells this Defendant's name as "Theses" in the caption but spells it as "These" throughout the remainder of the Complaint. Until the correct spelling is clarified, the Court will use the spelling in the caption.

**The Complaint**

Plaintiff makes the following allegations in the Complaint (Doc. 1):  In early September 2022, Plaintiff told Sgt. Frerking (Badge No. 8554) and C/O White that he felt suicidal and needed a crisis team (Doc. 1, p. 8).  Frerking and White ignored Plaintiff's request, so he went on a hunger strike.  Eventually,  Plaintiff was moved to a crisis holding cell on crisis watch, but no crisis team was summoned for several days.  Plaintiff's suicidal urges worsened, he heard voices, and he continued to ask for a crisis team, but Frerking and White failed to act.

After 12 days on hunger strike, on September 13, 2022, Plaintiff was finally seen by a mental health provider, Ms. Cisco.[2]  She assessed Plaintiff and cleared him to return to his former segregation cell (#25).  Ms. Cisco recommended to White and Frerking that Plaintiff be provided with soap to shower and books to read to "help drown out the voices" until his medication could be adjusted.

Before returning to his cell, Plaintiff was taken to the shower area with his hands cuffed behind his back.  He began to feel suicidal again and asked Frerking and White for a crisis team.  Frerking became very agitated and threatened to mace Plaintiff if he didn't stand up to return to his segregation cell, so Plaintiff complied.  Upon being secured in his cell, Plaintiff, who had not showered for 12 days while on crisis watch, asked when he would get a shower, soap, and books as mental health had recommended.  Frerking responded that mental health "didn't run shit and he didn't give a f*** what she recommended."  (Doc. 1, p. 9).  This increased Plaintiff's distress.

Around 3:00 that afternoon, Frerking and White started running segregation showers for the gallery, but skipped over Plaintiff.  He asked why he was not being allowed to shower.  Frerking said Plaintiff would not get a shower, he didn't care what mental health recommended,

---

[2] Ms. Cisco is not a Defendant in this action.

and he would mace Plaintiff if he didn't shut up.  Plaintiff still had not eaten anything.  He became stressed, depressed, and started hearing voices telling him to hurt himself, so he began to shout that he needed a crisis team.  Frerking and White, who were aware of Plaintiff's mental health issues and the fact he had attempted to take his own life 28 times, still ignored him.  Plaintiff then flooded his cell and continued to ask for a crisis team and to speak to a lieutenant.

Some hours later, the water from Plaintiff's cell had flooded the hallway.  Plaintiff was ordered to cuff up with the promise he would see a crisis team, but instead, was placed back in the shower with his hands cuffed behind his back.  After the water was cleaned up, White ordered Plaintiff to stand up to be returned to his cell.  Plaintiff refused to go until he spoke to a lieutenant or mental health.  White returned with Frerking, who shouted and threatened to mace Plaintiff if he did not comply; Plaintiff still refused.  The Unknown Correctional Officer arrived.  He and White yanked open the shower door and began stomping on Plaintiff's toes and hit him twice in the ribs.  When Plaintiff struggled to get away, Frerking sprayed him with mace.  White and the Unknown C/O continued kicking and stomping Plaintiff until he lost consciousness.  Plaintiff's hands remained cuffed behind his back the entire time.  When Plaintiff came to, Frerking ordered him to stand or be dragged to his cell, so Plaintiff walked back to cell #25.

Back in the cell, Plaintiff refused to let Frerking remove his cuffs until he saw a lieutenant, crisis team, or medical.  Eventually Frerking brought Lt. Theses and Major Coat to Plaintiff's cell.  Plaintiff allowed his cuffs to be removed and told Theses and Coat about the beating.  They refused to get Plaintiff any medical attention.  Plaintiff requested and was allowed to return to crisis watch as he feared for his safety.

The next morning, Plaintiff was taken to see Ms. Cisco and related these events to her.  She

3

promised to speak to someone about the matter. Around noon that day, Lt. Annitin[3] from Intel took Plaintiff's statement about the assault by Frerking, White, and the Unknown C/O, which had been captured on video. Later, Lt. Annitin took Plaintiff to be interviewed by plain-clothes detectives, and photos were taken of Plaintiff's injuries.

On September 15, 2022, Plaintiff was moved to Pinckneyville Correctional Center, where he remained on crisis watch.

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

| | |
|---|---|
| Count 1: | Eighth Amendment[4] deliberate indifference to serious medical needs claim against Frerking and White for denying and delaying mental health care for Plaintiff's serious mental health needs for approximately 12 days up to September 13, 2022, and then ignoring the care recommendations made by Plaintiff's mental health care professional. |
| Count 2: | Eighth Amendment excessive force claim against Frerking, White, and the Unknown Correctional Officer for beating Plaintiff and spraying him with mace while he was handcuffed in the shower at Big Muddy Correctional Center on or about September 13, 2022. |
| Count 3: | Eighth Amendment deliberate indifference to serious medical needs claim against Frerking, White, the Unknown Correctional Officer, Theses, and Coat for denying Plaintiff medical care for his injuries sustained in the beating described in Count 2. |

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[5]

---

[3] Lt. Annitin is not a Defendant in this action.
[4] Plaintiff invokes both the Eighth Amendment and Fourteenth Amendment as grounds for his claims. Because Plaintiff is a convicted prisoner, the claims will proceed under the Eighth Amendment. The Fourteenth Amendment governs such claims brought by pretrial detainees, and are dismissed as duplicative.
[5] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

## Discussion

### Count 1

Prison officials and medical staff violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical condition. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). The need for mental health treatment may also be a serious medical need. *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001). To state such a claim, a prisoner must plead facts and allegations suggesting that (1) he suffered from an objectively serious medical condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Id.*

The allegations in the Complaint are sufficient for Plaintiff to proceed on the deliberate indifference claim in Count 1 against Frerking and White.

### Count 2

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). Count 2 will proceed against Frerking, White, and the Unknown Correctional Officer.

### Count 3

Defendants Frerking, White, and the Unknown Correctional Officer, who allegedly inflicted injuries on Plaintiff, had a duty to obtain prompt medical attention for him yet failed to do so. This may amount to deliberate indifference to Plaintiff's medical needs. *See Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996). Soon after the incident, Plaintiff allegedly told Defendants Theses and Coat about the beating, and they also denied Plaintiff any medical

attention.  Count 3 will therefore proceed against all Defendants.

### **Unknown/John Doe Defendant**

Plaintiff is responsible for securing information aimed at identifying the Unknown Correctional Officer, in accordance with the John/Jane Doe Identification Order that will be entered separately.  Once the name of this unknown defendant is obtained, Plaintiff must file a motion to substitute the newly identified defendant in place of the generic designation in the case caption and throughout the Complaint.  The Warden of Big Muddy River Correctional Center, in his/her official capacity only, will be added as a Defendant for the purpose of responding to Plaintiff's requests for information regarding the identity of the Unknown Correctional Officer.

### **Disposition**

The Complaint states colorable claims in Count 1 against Frerking and White; in Count 2 against Frerking, White, and the Unknown Correctional Officer; and in Count 3 against Frerking, White, the Unknown Correctional Officer, Theses, and Coat.

The Clerk of Court is **DIRECTED** to **ADD** the Warden of Big Muddy River Correctional Center, in his or her official capacity, to the docket for the purpose of responding to discovery.

The Clerk shall prepare for Frerking (Badge No. 8554), White, Theses (or These), Coat, and the Warden of Big Muddy River Correctional Center (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full

costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and

Accountability Act.

**IT IS SO ORDERED.**

**DATED:  January 12, 2024**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.